UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

VS.                                              CASE NO: 2:15-cr-115-FtM-38CM

ZACHARIAS ABAB AGUEDO

### ORDER[1]

This matter comes before the Court on the Defendant, Zacharias Abab Aguedo's Motion to Suppress (Doc. #133) filed on January 4, 2016. The Government filed its Response in Opposition (Doc. #142) on January 15, 2016. The Defendant filed a Reply Brief (Doc. #154) on January 29, 2016. The Motion to Suppress was stayed pending a determination of Aguedo's competency to proceed.

During a telephone status conference on December 9, 2016, defense counsel, David J. Joffe, informed the Court that the Motion to Suppress could proceed as Aguedo had been found competent to stand trial. On the record at the December 14, 2016 hearing, Attorney Joffe stipulated that Aguedo was competent to stand trial. After a thorough review of the reports generated by Jethro Tommer, PhD, Michelle Quiroga, PhD, and by, Lisa B. Feldman, a forensic psychologist employed by the United States Department of Justice, the Court agreed. As such, the Court found Aguedo competent. Having ruled on the competency issue, the Court turned to the Motion to Suppress.

---

[1] Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or websites.  These hyperlinks are provided only for users' convenience.  Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites.  Likewise, the Court has no agreements with any of these third parties or their websites.  The Court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

At the hearing, the Government was represented by Assistant United States Attorney, Bob Barclift who called Lee County Sheriff's Office (LCSO) Detective Christopher Tice and LCSO Detective Gabriel Rose as witnesses. The Government introduced a recording of Aguedo's interview with Det. Rose (Govt. Ex. #1) and transcript of same (Govt. Ex. #2). The Defendant was present and represented by Attorney Joffe who did not call any witnesses nor introduce any further evidence.

### **Testimony and Evidence**

On June 2, 2016, Det. Christopher Tice drove a Confidential Informant (CI) to 4958 Dean Street, Fort Myers, Florida to purchase heroin. When Det. Tice and the CI arrived at the Dean Street residence, there was no one home. The CI placed a call to a trap phone[2] and was told to go to the CVS pharmacy located at 4710 Palm Beach Boulevard.

Det. Tice drove the CI to the CVS. The CI pointed to a couple walking toward the CVS and identified Aguedo, who was wearing brightly colored camo shorts, as the individual he had spoken to on the phone. Upon arriving at the CVS, the CI exited Dep. Tice's vehicle and walked over to Aguedo. An unknown vehicle pulled into the CVS parking lot and Aguedo and the CI got into the vehicle's back seat. Once inside the vehicle, the CI purchased heroin from Aguedo. The CI exited the vehicle, walked back to Det. Tice's vehicle, and handed over two small bags of heroin.

On June 11, 2015, starting around 6:00am, Det. Tice performed surveillance on the Dean Street residence prior to a search warrant being executed. The SWAT team arrived at approximately 7:30am and secured the residence and the occupants. Aguedo

---

[2] Det. Rose explained that a trap phone is a phone used exclusively by the narcotics dealer and is generally kept at a specific location like a line phone in someone's house. The trap phone will be passed from dealer to dealer as a new dealer takes over at a specific location so the phone number stays the same in order to service potential buyers.

was in the Dean Street residence at the time Det. Tice entered to begin his search. Det. Tice recognized Aguedo as the person who sold the heroin to the CI in the CVS parking lot on June 2, 2015. Aguedo was arrested at the residence and transported to LCSO headquarters.

Det. Gabriel Rose, the case agent assigned to investigate this case, interviewed Aguedo at LCSO headquarters after reading him his *Miranda* rights. Det. Rose testified that Aguedo waived his rights. Although Aguedo was slow to respond to his questions, Det. Rose stated that Aguedo's slow answers were not unusual for someone who was in custody. When asked if Aguedo could have been under the influence of a controlled substance during his interview, Det. Rose stated Aguedo seemed to be dealing with him fine.

## DISCUSSION

Aguedo argues that he did not voluntarily and knowingly waive his *Miranda* rights due to his mental state brought on by years of heroin addiction and possibile intoxication at the time he was interviewed by Det. Rose. The Government argues that while Aguedo's answers were generally slow in coming, there is no evidence that he did not voluntarily make incriminating statements to Det. Rose or that he was under the influence at the time.

After a valid reading of the *Miranda* Rights, a suspect may be interrogated only if he (1) validly waives the right to remain silent, and (2) either has counsel present during questioning or validly waives the right to counsel. *Miranda*, 384 U.S. at 475. The Court must find the Defendant did, in fact, waive his rights, and that the waiver of the right to silence and the right to counsel was made knowingly and voluntarily. *Edwards v. Arizona*, 451 U.S. 477, 481-84 (1981). The Government must prove, by a preponderance of the

3

evidence, that the suspect did in fact waive his rights knowingly and voluntarily. *Colorado v. Connelly*, 479 U.S. 157 (1986).

### (a) Express Waiver

A waiver can be in an express statement clearly indicating the suspect is willing to answer questions and does not want an attorney, or waiver may be implied from the words and actions of the person being questioned. *North Carolina v. Butler*, 441 U.S. 369, 373 (1979). The waiver must be affirmatively made; a waiver cannot be implied simply by answering police questions or failing to invoke a right, after being Mirandized. *Edwards v. Arizona*, 451 U.S. 177, 481-84 (1981).

In this instance, Det. Rose read Aguedo his *Miranda* rights before the audio taped interview started. After reading Aguedo his *Miranda* rights, Det. Rose asked Aguedo if he wanted to speak with him. Aguedo responded "up." Det. Rose then clarified Aguedo's answer by asking if his nod meant yes. Aguedo responded "sure, yes." Based upon the testimony and recording played during the hearing, it is clear that Aguedo made an express waiver of his *Miranda* rights.

### (b) Whether Aguedo's Waiver was Knowingly and Voluntarily Made

There are two distinct dimensions to a knowing and voluntary waiver of the suspect's rights. First, the "relinquishment of the right must have been the product of a free and deliberate choice rather than intimidation, coercion, or deception." *United States v. Beale*, 921 F.2d 1412, 1435–36 (11th Cir. 1991) (citing *Dunkins v. Thigpen*, 854 F.2d 394, 398 (11th Cir. 1988)). Second, the "waiver must have been made with the awareness of both the right[s] being abandoned and the consequences of the decision to abandon [those rights]." *Id.*

Next, it must be determined whether the Defendant knowingly waived his right to counsel. To be a "valid waiver, the suspect's voluntary decision to speak must be made with full awareness and comprehension of all the information *Miranda* requires the police to convey." *Moran v. Burbine*, 475 U.S. 412, 423–24 (1986). The suspects *Miranda* Rights should be read and, if necessary, explained to him in his native language, or a language that he can adequately understand, for a waiver to be knowingly made. Additionally, there is no need to define any term in the *Miranda* warnings absent an indication from the suspect that he does not understand something. Further, if the suspect initially expresses a lack of understanding about his rights, but then gains understanding when his rights are further explained, a waiver would then be knowingly and voluntarily given. *United States v. Savatdy*, 452 F.3d 974 (8th Cir. 2006). Whether the Defendant knowingly waived his *Miranda* Rights is determined by looking at the totality of the circumstances surrounding the interrogation. *Beale*, 921 F.2d at 1435.

Aguedo argues that his apparent sleepiness, slow speech, and seeming confusion toward the end of his interview with Det. Rose demonstrate that he was under the influence and not capable of knowingly, voluntarily and freely waving his *Miranda* rights. However, the mere fact that a suspect might be under the influence when questioned does not render his statements inadmissible as involuntary. *United States v. Kirk*, No. 2:12-CR-114-FTM-99, 2013 WL 1899604, at *6 (M.D. Fla. Apr. 1, 2013), *report and recommendation adopted,* No. 2:12-CR-114-FTM-99, 2013 WL 1899591 (M.D. Fla. May 7, 2013) (holding that the rule of law seems to be well settled that the drunken condition of an accused when making a confession, unless such drunkenness goes to the extent

of mania, does not affect the admissibility in evidence of such confession, but may affect its weight and credibility with the jury).

There is no evidence before this Court that Aguedo was under the influence of a controlled substance during the interview. Defense counsel would have the Court speculate. To the contrary, evidence presented during the hearing shows that Aguedo was not able to ingest any controlled substances for at least five to six hours prior to the interview. The SWAT team entered the Dean Street residence at approximately 7:30am. and secured Aguedo. The interview with Det. Rose commenced around 1:00pm. Det. Rose testified that while Aguedo appeared tired and his speech was slow, he did fine during the interview. He further noted that subjects are often tired or speak slowly while in custody.

Based upon the testimony and evidence presented at the hearing, the Court finds that Aguedo knowingly, freely and voluntarily waived his *Miranda* rights and subsequently made incriminating statements to Det. Rose. Therefore, the Defendant's Motion to Suppress is due to be denied.

Accordingly, it is now

**ORDERED:**

Zacharias Abab Aguedo's Motion to Suppress ([Doc. #133](Doc. #133))is **DENIED**.

**DONE AND ORDERED** at Fort Myers, Florida, this 20th day of December, 2016.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: Counsel of Record